Matthew L. Johnson (6004)
Russell G. Gubler (10889)
MATTHEW L. JOHNSON & ASSOCIATES, P.C.
Lakes Business Park
8831 W. Sahara Ave.
Las Vegas, NV 89117
Phone: (702) 471-0065
Fax: (702) 471-0075
Email: mjohnson@mjohnsonlaw.com
Attorneys for Debtor

E-filed: May 13, 2013

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | Case No.: 12-22097-MKN |
| SUBMARINA, INC. | Chapter 11 |
| Debtor. | Hearing Date: June 5, 2013 |
| | Hearing Time: 9:30 a.m. |

### DEBTOR'S MOTION SEEKING AN ORDER AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING, GRANTING SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, AND MODIFYING THE AUTOMATIC STAY ON AN ORDER SHORTENING TIME

Submarina, Inc. ("Debtor"), hereby submits its motion ("Motion") for entry of an order authorizing the Debtor to obtain post-petition financing pursuant to Sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") by entering into that certain Debtor-in-Possession Loan and Agreement (the "DIP Agreement") by and among the Debtor and Kerensa Investment Fund 2, LLC (the "Post-Petition Lender"), a copy of which is attached hereto Exhibit "A," together with any related notes, as the same may be amended, supplemented, or otherwise modified from time to time, and all instruments, agreements, assignments, and other documents referred to therein or herein or requested by the Post-Petition Lender to give effect to the terms thereof and hereof (the DIP Agreement and such other instruments, agreements, assignments, and other documents, as at any time amended, substituted, or restated, being collectively called the "DIP Financing Documents"), all subject to the terms and conditions set forth herein and therein; (2) granting priority administrative expense status to the Post-Petition Lender as specifically set forth herein and in the DIP Agreement, pursuant to Sections 364(c)(1) of the Bankruptcy Code; (3) modifying the

automatic stay pursuant to Section 362(d) of the Bankruptcy Code; and (4) in accordance with Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and all applicable local bankruptcy rules, scheduling a final hearing (the "Final Hearing") and approving notice with respect thereto.

This Motion is made and based on the *Declaration of Bruce Rosenthal in Support of the Debtor's Motion Seeking an Order Authorizing the Debtor to Obtain Post-Petition Financing, Granting Liens and Super-Priority Administrative Expense Status, and Modifying the Automatic Stay on an Order Shortening Time* (the "Declaration"), the papers and pleadings on file herein, judicial notice of which are respectfully requested, and any arguments of counsel entertained by the Court at the time of any hearings on this Motion.

I. **BANKRUPTCY RULE 4001 CONCISE STATEMENT**

By this Motion, the Debtor requests:[1] (a) entry of an Order authorizing the Debtor: (I) to obtain post-petition financing pursuant to Sections 363 and 365 of the Bankruptcy Code by entering into the DIP Agreement; (ii) to grant priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of Title 11 of the Bankruptcy Code, puruant to section 364(c), subject to a Carve Out; and (iii) to obtain post-petition loans and financing in the amount of up to $450,000.00.

II. **MATERIAL PROVISIONS OF PROPOSED DIP FINANCING:**

    A.    **Borrower:**    Submarina, Inc.

    B.    **Lender:**    Kerensa Investment Fund 2, LLC

    C.    **Loan Amount:**    up to $450,000.00

    D.    **Term:**    to December 31, 2013

    E.    **Purpose:**    The proceeds of the DIP Loan are to fund operations of the Debtor throughout its bankruptcy case and to fund the Debtor's Chapter 11 plan. The funds will be used to:

---

[1] The following is only a brief summary, and nothing herein is intended or should be construed as altering or amending the DIP Agreement.

- 2 -

1) Pay operating expenses throughout the Chapter 11 process,

2) Pay legal and professional fees to grow the business, including preparing required disclosure documents and auditing financials to sell franchises;

3) Technology investments to maintain a competitive market position; and

4) Support franchisee operations, and to increase menu enhancements and marketing initiatives, which will eliminate the impact on the operations that have been caused by the defaulting franchisees.

F. **Security**: Priority over administrative expenses, subject to the Carve-Out

 i. Pursuant to Section 364(c)(1) of the Bankruptcy Code, a priority over any or all administrative expenses of the kind specified in section 503(d) or 507(b) of the Bankruptcy Code, subject to the Carve-Out.

G. **Carve-Out**: The priority or interests granted to the Post-Petition Lender will be valid, enforceable, and perfected security interests and liens, but shall be subject and subordinate to allowed claims of professionals of the Debtor (the "Carve-Out").

H. **Interest**: 10% if the Court orders an escrow account or similar devise be established and funds be held in the account into which Debtor's answering defaulting franchisees must pay the amounts they otherwise are contractually obligated to pay the Borrower. In addition, to obtain the rate of 10%, the Debtor must obtain a default judgment against the non-answering defaulting franchisees. If Debtor does not obtain a default judgment against the non-answering defaulting franchisees, or the Court does not establish an escrow account or similar devise for payments of royalties and marketing and promotion funds otherwise due Debtor from the answering defaulting franchisees, or if such account is ordered, but said account fails to have on deposit the full amount advanced by Post-Petition Lender to Debtor, then on the amounts advanced by Post-Petition Lender which exceed the balance of funds in the escrow account the interest on such over advance shall accrue interest until paid or such amount does not exceed the dollar value of funds in the escrow account at a rate of 20%.

I. **Waiver of Applicable Non-Bankruptcy Law Relating to Perfection:**

The Order is deemed to be sufficient and conclusive evidence of the priority, perfection, and validity of the post-petition liens and security interests granted therein, if any, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording or possession of the subject collateral, or other act to validate or perfect such security interest or lien.

J. **Relief from Automatic Stay:**

The automatic stay provisions of Section 362 of the Bankruptcy Code are modified and vacated to the extent necessary to enforce certain remedies against Post-Petition Collateral, if any, without having to obtain any further order of the Bankruptcy Court.

K. **Application of Proceeds of Collateral:**

The Debtor shall use the proceeds of all loans made pursuant to the DIP Financing Documents and all other accommodations made by the Post-Petition Lender for the Debtor for only those purposes described herein, and not for any purpose prohibited by law or by the terms and conditions of the DIP Agreement, any of the DIP Financing Documents, or the Order; and expressly excluding use of the proceeds (including the Carve Out) for the investigation or prosecution of any claim and/or cause of action against the Post-Petition Lender, including, but not limited to, any and/or all claims and causes of action arising (i) under Sections 540 and/or 550 of the Bankruptcy Code; (ii) under a theory of equitable subordination or recharacterization; or (iii) that challenges the DIP Obligations or the security interests granted pursuant to the DIP Financing Documents or the Order.

M. **Waiver of Section 506(c) Surcharge:**

Subject to entry of an Order, the Debtor shall not assert a claim under Section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the Post-Petition Lender upon the Post-Petition Collateral.

N. **Indemnification:** The Debtor agrees to indemnify and hold harmless the Post-Petition Lender and all other related parties from and against the use or contemplated use of the proceeds of any of the Loans, any transaction contemplated by the DIP Financing Documents,

or the other loan documents, and any administrative or investigative proceeding by any governmental agency arising out of or related to a claim, demand, action, or cause of action related to the foregoing, among other matters.

### III.  STATUS OF THE CASE AND JURISDICTION

On October 25, 2012 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor has continued in the possession of its property and is operating and managing its businesses as a debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

No request for a trustee or examiner has been made and no creditors' committee has yet been appointed in this case. This Court has jurisdiction over this Motion under 28 U.S.C. §§157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§157(b)(2)(A), (D), and (O). Venue of these proceedings and this Motion is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

The statutory predicates for the relief sought herein are Sections 105(a), 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 4001, 6004, and 9014, and LR 4001(b).

### IV.  BACKGROUND

The Debtor is a Nevada Corporation and a Franchiser of a chain of sub sandwich shops, which conduct business under the name of "Submarina." Over the course of its operation, the Debtor has executed many franchise agreements with franchisees, and currently has approximately 50 active Franchisees. The Debtor has also entered into other executory contracts and/or unexpired leases.

### V.  RELIEF REQUESTED

The Debtor hereby requests entry of the Order granting the following relief, all as more specifically enumerated above in the introductory paragraph of this Motion.

#### A.  The Debtor's Need for Financing

The Debtor requests authority to obtain post-petition financing from the Post-Petition Lender. The requested relief is necessary for the Debtor to continue the operations of its business as a debtor-in-possession, to preserve the going-concern value of its assets, and to

minimize the disruption of the Debtor as a going concern. The Debtor will suffer immediate and irreparable harm unless it is immediately authorized to obtain financing in the amount and on the terms and conditions set forth in the Order and in the DIP Financing Documents.

The Debtor is unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a super-priority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code.

### B. Summary of Relief Sought

The Debtor seeks authorization to obtain, on an emergency basis, priority, post-petition financing, pursuant to Section 364(c)(1) of the Bankruptcy Code on terms as outlined in the DIP Financing Documents substantially in the form attached hereto as Exhibit "A," and incorporated herein by reference. Specifically, the Debtor seeks the entry of an Order authorizing (a) the Debtor to enter into the DIP Agreement; (b) obtain the DIP Loan from the Post-Petition Lender, (c) to pay all interest, fees, expenses, and other obligations provided for under the Order and the DIP Financing Documents, and (d) to satisfy all conditions precedent and perform all obligations there under in accordance with the terms thereof.

A condition to the willingness of the Post-Petition Lender to fund the DIP Loan is that, as security for the prompt payment and performance of the DIP Loan and all interest, fees, expenses, and charges at any time payable by the Debtor under the Order (collectively, the "DIP Obligations"), the Post-Petition Lender receives:

    i.    Pursuant to Section 364(c)(1) of the Bankruptcy Code, subject only to the Carve-Out, a priority over any or all administrative expenses of the kind specified in section 503(d) or 507(b) of the Bankruptcy Code.

The priority described above shall hereinafter be referred to as the "Post-Petition Priority". Notwithstanding any provisions, the Post-Petition Priority shall not attach to any of the following property: (I) any causes of action, including causes of action or claims pursuant to Sections 544, 545, 547, 548, 550, or 553 of the Bankruptcy Code (the "Avoidance Actions"); and (ii) any monies recovered in connection with the successful prosecution or settlement of

Avoidance Actions or any other causes of action held by the Debtor's estate (collectively, the "Avoidance Proceeds").

Pursuant to the Order, all DIP Obligations will be granted administrative priority in accordance with, and shall constitute an allowed super-priority claim (the "Super-Priority Claim") pursuant to the provisions of Section 364(c)(1) of the Bankruptcy Code with priority over all other administrative expenses in the Debtor's bankruptcy case of the kind specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 552, 726, 1114, or other similar section of the Bankruptcy Code.

Further, no costs or administrative expenses which have been or may be incurred in this Chapter 11 case, in any proceedings related hereto or in any superceding Chapter 7 case, and no priority claims are or will be prior to or on a parity with the Super-Priority Claim of the Post-Petition Lender against the Debtor arising under any of the DIP Financing Documents, except for the Carve-Out for professional fees and for fees payable to the U.S. Trustee and to the Clerk of the Court.

The Debtor believes that good cause has been shown for the entry of the Order to obtain the DIP Loan. The Debtor's need for financing of the type requested herein and as afforded by the Order is immediate and critical. Entry of the Order will minimize disruption of the Debtor's operations and business as a going concern, will preserve the assets of the Debtor's estate, and is in the best interests of the Debtor, its creditors and its estate.

The Debtor further believes that the terms of the financing are fair and reasonable, reflect the Debtor's reasonable exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration. The DIP Agreement is necessary to maintain the value of the Debtor's assets, including going-concern value, and the ability to continue its business and operations. For the foregoing reasons, and in order to assure operating capital, it is necessary for the Debtor to have a post-petition credit facility. Otherwise, the Debtor will be forced to close its operations.

V.    BASIS FOR RELIEF REQUESTED

As described above, it is essential to the Debtor's operations that it be granted immediate access to funds. Absent access to the working capital financing that will be

available to the Debtor under the proposed DIP loan, the Debtor will be unable to maintain its business operations or preserve the value of its assets.

The Debtor believes that the terms and conditions of the DIP loan, the DIP Financing Documents, and the Order, and the related relief requested herein are fair, reasonable, and in the best interests of the Debtor, its estate and its creditors.

### A.    Approval Under Section 364(c) of the Bankruptcy Code

Section 364 of the Bankruptcy Code allows the Debtor to (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of business, and (c) obtain credit with specialized priority or with security. If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, the Court may authorize the obtaining of credit or the incurring of debt, repayment of which is entitled to super-priority administrative expense status or is secured by a priming lien on certain property and a lien on unencumbered property, or a combination of the foregoing.

The Debtor proposes to obtain financing under the DIP Loan, the DIP Financing Documents, and the Order by providing priority of payment pursuant to Section 364(c) of the Bankruptcy Code. The statutory requirement for obtaining post-petition credit under Section 364(c) is a finding, made after notice and hearing, that the Debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code.]" *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992) (the debtor must show "by a good faith effort that credit was not available without" the protections of Section 364(c)). Section 364(c) financing is appropriate when the trustee or debtor-in-possession is unable to obtain unsecured credit allowable as an ordinary administrative claim. *See In re Crouse Group, Inc.*, 71 B.R. 544, 549, modified on other grounds, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (secured credit under Section 364(c)(2) is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

Courts have articulated a three-part test to determine whether a debtor is entitled to Section 364(c) financing:

    a.    The debtor is unable to obtain unsecured credit under Section 364(b) (i.e., by allowing a lender only an administrative claim);

- 8 -

     b.     The credit transaction is necessary to preserve the assets of the estate; and

     c.     The terms of the transaction are fair, reasonable, and adequate given the circumstances of the debtor and the proposed lender.

*See Crouse Group*, 71 B.R. at 549. Additionally, courts will generally accord significant weight to the necessity of the debtor obtaining post-petition financing in order to remain viable. *See In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

As noted above, the need for the Debtor to obtain financing is critical. Further, the evidence at the hearing, if necessary, will show that a working capital facility of the type needed in this Chapter 11 case could not have been obtained without a priority basis.

**B.    The Debtor Does Not Have an Alternative to the DIP Loan, the DIP Financing Documents, and the Order**

If necessary, the evidence at the hearing will show that a working capital facility of the type needed in this case could not have been obtained without a priority basis. Indeed, the potential sources of a credit facility for the Debtor, obtainable on an expedited basis and on reasonable terms, are practically nonexistent. In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Snowshoe Co.*, 789 F.2d at 1088.

A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Section 364(c). *Id; In re Plabell*, 137 B.R. at 900. Where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor[ to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom, *Anchor Sav. Bank FSB v. Sky Valley*, 99 B.R. 1997, 120 n.4 (N.D. Ga. 1989). Thus, the evidence introduced at the hearing will satisfy the requirement of Section 364(c) that unsecured credit was unavailable to the Debtor.

The U.S. Court of Appeals for the Ninth Circuit has recognized that immediate interim relief may be crucial to the success of a corporate reorganization.

> We realize that in certain circumstances, the entire reorganization effort may be thwarted if emergency leave is withheld and that reorganization under the Bankruptcy Code is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund a central business operation. It is for this reason that Congress specified that hearings concerning the use of cash collateral "shall be scheduled in accordance with the needs of the debtor."

*In re Center Wholesale, Inc.*, 759 F.2d 1440, 1440 n. 21 (9th Cir. 1985) (citations omitted).

Because of the Debtor's acute liquidity crisis, the status of the Debtor's operations and collateral base, the need to maintain confidentiality, and the impracticability of pursuing (and paying for) numerous prospective lenders, the Debtor has concluded that, in its business judgment, it was not practicable to try to "shop" the DIP loan to every possible lender. However, only the Post-Petition Lender, which is already familiar with the Debtor's business operations, corporate structure, financing arrangements, and collateral base, and which has already performed the necessary due diligence in connection with the DIP Agreement, was able to offer a post-petition credit facility to meet the Debtor's working capital needs on the terms, and within the time frame, that the Debtor needed and pursuant to the DIP Financing Documents.

C.   **Application of the Business Judgment Standard**

As described above, the Debtor's management has concluded that the DIP Loan, the DIP Financing Documents, and the Order provide the only alternative available under the circumstances. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. *See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *Ames*, 115 B.R. at 38 (in examining requests by a debtor for interim financing, courts apply the same business judgment standard applicable to other business decisions; *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *IN re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co., v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

In general, a bankruptcy court should defer to a debtor-in-possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *See In re Curlew Valley Assoc.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." *Id.* at 513-14 (footnotes omitted).

The Debtor has exercised sound business judgment in determining that a post-petition credit facility is appropriate and have satisfied the legal prerequisites to borrow under the DIP Loan, the DIP Financing Documents, and the Order. The terms of the DIP Loan are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Debtor should be granted authority to borrow funds from the Post-Petition Lender on the secured, administrative super-priority basis described above, pursuant to Section 364(c) of the Bankruptcy Code, and take the other actions contemplated by the Order as requested herein.

The Debtor believes that it could not obtain financing from any other lender on terms more favorable than the DIP Loan offered by the Post-Petition Lender, and certainly not before all of the Debtor's limited cash resources were depleted by the search. The Debtor's management exercised their best business judgment in negotiating he DIP Loan, the DIP Financing Documents, and the Order that is presently before the Court.

### D.     Request for Modification of the Automatic Stay

As set forth more fully in the proposed Order, the proposed DIP Loan contemplates a modification of the automatic stay established pursuant to Section 362 of the Bankruptcy Code to permit the Post-Petition Lender to take certain actions. More specifically, the Order provides the Post-Petition Lender, *inter alia*, to enforce certain remedies against the Post-Petition Collateral, if any, without having to obtain any further order of the Bankruptcy Court. The Debtor submits that stay modification provisions of this sort are ordinary and usual features of post-petition debtor-in-possession financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances. Accordingly, the Court should modify the automatic stay to the extent contemplated by the Order.

### E. Good Faith.

Section 364(e) of the Bankruptcy Code was designed to "encourage the extension of credit to debtors" by allowing lenders to "rely on a bankruptcy court's authorization of the transaction." *In re EDC Holding Co.*, 676 F.2d 945, 947 (7th Cir. 1982) (the purpose of Section 364(e) is "to overcome people's natural reluctance to deal with a bankrupt firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction and is trying to get the district court or the court of appeals to reverse the bankruptcy judge"); *see also In re North Atlantic Millwork Corp.*, 155 B.R. 271, 279 (Bankr. D. Mass. 1993) ("The purpose of section 364(e) is to allow good faith lenders to rely upon conditions at the time they extend credit and to encourage lenders to lend to bankrupt entities.").

The DIP Loan is and will be the result of good faith and arm's length negotiations, with all parties represented by counsel. The Debtor believes that the terms of the DIP Loan are fair and reasonable under the circumstances, and that the Post-Petition Lender is entitled to the benefits of Section 364(e) of the Bankruptcy Code. However, for purposes of full disclosure, Kerensa Investment Fund 2, LLC is an entity organized and owned by Bruce Rosenthal, who is also the chief executive officer of Debtor.

////

////

**VI. CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Motion be granted, in full, pursuant to the terms of the DIP Agreement, attached as Exhibit "A", and that any further relief as is just and equitable also be granted.

DATED this 13th day of May, 2013.

MATTHEW L. JOHNSON & ASSOCIATES, P.C.

_____
Matthew L. Johnson (6004)
Russell G. Gubler (10889)
Lakes Business Park
8831 West Sahara Avenue
Las Vegas, Nevada 89117
Attorneys for Debtor in Possession

- 13 -

**CERTIFICATE OF SERVICE**

I certify that on the 13th day of May, 2013, I served a copy of the (1) DEBTOR'S MOTION SEEKING AN ORDER AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING, GRANTING SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, AND MODIFYING THE AUTOMATIC STAY ON AN ORDER SHORTENING TIME; (2) DECLARATION OF BRUCE ROSENTHAL IN SUPPORT OF DEBTOR'S MOTION SEEKING AN ORDER AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING, GRANTING SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, AND MODIFYING THE AUTOMATIC STAY ON AN ORDER SHORTENING TIME by electronic service, as follows:

*See* Master Service List.

I further certify that on the 13th day of May, 2013, I served a copy of the foregoing documents via facsimile if listed or U.S. First Class prepaid Postage to the following:

JTJM, INC
c/o Elizabeth Stephens
STEPHENS/SULLIVAN HILL
228 So. Fourth St. 1st Floor
Las Vegas, NV 89101
(702) 384-9102

JEFFREY WARFILED
c/o Elizabeth Stephens
STEPHENS/SULLIVAN HILL
228 So. Fourth St. 1st Floor
Las Vegas, NV 89101
(702) 384-9102

**JTJM, LLC**
C/O ELIZABETH STEPHENS
228 SO FOURTH ST, 1ST FLR
LAS VEGAS, NV 89101
(702) 384-9102

_____
An Employee of Matthew L. Johnson & Associates, P.C.

# EXHIBIT "A"

## PROMISSORY NOTE

**Borrower:** Submarina, Inc. of 4801 Woodway Drive, Suite 300E, Houston, TX 77056 (the "Borrower")

**Lender:** Kerensa Investment Fund 2, LLC of 4801 Woodway Drive, Suite 300E, Houston TX 77056 (the "Lender")

**Principal Amount:** Up to $450,000.00

1. FOR VALUE RECEIVED, The Borrower promises to pay to the Lender at such address as may be provided in writing to the Borrower, the principal sum of borrowed from date of installment, with interest payable on the unpaid principal at the rate of 10.00% (ten percent) per annum (the "Base Rate"), on the part of the principal, if the United States Bankruptcy Court District of Nevada (the "Court") Case No. 13-01051-mkn orders an escrow account or similar devise be established and funds be held in the account into which Answering Defaulting Franchisees must pay the amounts they otherwise are contractually obligated to pay the Borrower. The "Answering Defaulting Franchisees" include any franchisees of Borrower that answer the complaint in the adversary proceeding, Case No. 13-01051-mkn of the Court. To receive the benefit of the Base Rate, the Borrower must also obtain a default judgment against the non-Answering Defaulting Franchisees. If the Debtor does not obtain a default judgment against the non-Answering Defaulting Franchisees, and the Court does not establish an escrow account or similar devise for payments of royalties and marketing and promotion funds otherwise due Borrower by the Answering Defaulting Franchisees, or if such account is ordered, but said account fails to have on deposit the full amount advanced by Lender to Borrower, then on the amounts advanced by Lender which exceed the balance of funds in the escrow account the interest on such over advance shall accrue interest until paid or such amount does not exceed the dollar value of funds in the escrow account at an increased rate (the "Increased Rate") rate of 20% (twenty percent). Interest shall be calculated on each tranche of money lent on basis of 365 day year calculated from date of receipt of funds to date repayment. Due to changes in amount borrowed as well as possible changes in escrow account status and actual daily balance in escrow account some funds advanced by Lender may from time to time be subject to Base Rate interest and at other times Increased Rate Interest.

2. This Note will be repaid in full on December 31st, 2013.

3. At any time while not in default under this Promissory Note, the Borrower may pay the outstanding balance then owing under this Promissory Note including all accrued Base Rate and Increased Rate interest to the Lender without further bonus or increase.

4. Notwithstanding anything to the contrary in this Promissory Note, if the Borrower defaults in the performance of any obligation under this Promissory Note, then the

Lender may declare the principal amount owing and interest due under this Promissory Note at that time to be immediately due and payable.

5. All costs, expenses and expenditures including, and without limitation, the complete legal costs incurred by the Lender in enforcing this Promissory Note as a result of any default by the Borrower, will be added to the principal then outstanding and will immediately be paid by the Borrower. In the case of the Borrower's default and the acceleration of the amount due by the Lender all amounts outstanding under this Promissory Note will bear interest at the rate of 25.00 percent per annum from the date of demand until paid.

6. If any term, covenant, condition or provision of this Promissory Note is held by a court of competent jurisdiction to be invalid, void or unenforceable, it is the parties' intent that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Promissory Note will in no way be affected, impaired or invalidated as a result.

7. This Promissory Note will be construed in accordance with and governed by the laws of the State of Nevada. Notwithstanding any provision herein or any document or instrument now or hereafter securing this Promissory Note, the total liability for payments in the nature of interest shall not exceed the limits now imposed by the applicable laws of the State of Nevada.

8. This Promissory Note will inure to the benefit of and be binding upon the respective heirs, executors, administrators, successors and assigns of the Borrower and the Lender. The Borrower waives presentment for payment, notice of non-payment, protest and notice of protest.

9. Upon the Court approving this Promissory Note and the Lender and Borrower subsequently agreeing to execute the Promissory Note, coincident to such signing the Borrower shall pay the Lender an administrative fee of $2,500.00 (Twenty-five Hundred Dollars)

10. The failure of any holder of this Promissory Note to exercise any option hereunder shall not constitute a waiver of any right to exercise the same in the event of any subsequent default, or in the event of continuance of any existing default.

////

////

11. This Note must have priority over any or all administrative expenses of the kind specified in section 503(d) or 507(b) of the United States Bankruptcy Code, pursuant to Section 364(c)(1) of the United States Bankruptcy Code. However, any priority granted to the Lender shall be subject and subordinate to allowed claims of professionals of the Debtor.

IN WITNESS WHEREOF the parties have duly affixed their signatures under seal on this _____th day of _____, 2013.

**SIGNED, SEALED, AND DELIVERED**
this ___th day of _____, 2013.

_____
Submarina, Inc.

**SIGNED, SEALED, AND DELIVERED**
this ___th day of _____, 2013.

_____
Kerensa Investment Fund 2, LLC