L. Edward Humphrey, Esq.
Nevada Bar No. 9066
**HUMPHREY LAW PLLC**
201 West Liberty Street, Suite 204
Reno, Nevada 89501
Tel:    775-420-3500
Fax:    855-485-6329
ed@hlawnv.com
*Attorney for Chapter 11 Trustee,*
*W. Donald Gieseke*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | **CASE NO:  BK-S-12-22097-MKN** (Lead Case) |
| **SUBMARINA, INC.** | Chapter 11 |
| | JOINTLY ADMINISTERED |
| | CASE NO:  BK-S-11-24352-MKN |
| **KERENSA INVESTMENT FUND 1, LLC** | **TRUSTEE'S COMBINED MOTION FOR AN ORDER TO SELL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS, FOR APPROVAL OF ASSUMPTION AND ASSINGMENT OF CERTAIN EXECUTORY CONTRACTS, FOR APPROVAL OF BIDDING PROCEDURES AND BID PROTECTIONS** |
| Debtor. | |
| | **PROPOSED HEARING DATE:** July 12, 2017 |
| | **PROPOSED HEARING TIME:** 9:30 A.M. |
| | Estimated Time:  1 hour |

1

W. DONALD GIESEKE, Chapter 11 Trustee ("Trustee" or "Chapter 11 Trustee") for the Estate of SUBMARINA, INC. ("Debtor") moves this Court, pursuant to sections 105, 363, 365, 503 and 507 of the Bankruptcy Code, Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 6004 of the United States Bankruptcy Court for the District of Nevada (the "Local Rules"), for the entry of an order ("Sale Order") substantially in the form attached hereto as **Exhibit 4**:

    i.    approving proposed auction and bid procedures (the "Bid Procedures") and proposed bid protections in connection with the sale (the "Sale") of certain assets of the Debtor, including the Debtor's franchise related assets (the "Assets", as more particularly defined below and in the proposed Asset Purchase Agreement (the "Asset Purchase Agreement", attached as **Exhibit 1**);

    ii.    establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"), and approving the form and manner of notice of the proposed assumption and assignment of executory contracts and unexpired leases in the form attached hereto as **Exhibit 2** (the "Assumption and Assignment Notice"); and

    iii.    approving the form and manner of notice of the Auction and the Sale Hearing (the "Auction and Sale Hearing Notice") attached hereto as **Exhibit 3**; and

    iv.    entering an order (the "Sale Order"), substantially in the form attached hereto as **Exhibit 4**:

a.   authorizing the Sale to the successful bidder at the Auction, free and clear of all liens, claims and encumbrances, except for any liabilities expressly assumed in the Asset Purchase Agreement;

b.   authorizing the assumption and assignment of certain executory contracts in connection with the Sale;

c.   waiving the 14-day notice periods in Bankruptcy Rules 6004(h) and 6006(d);

d.   finding the successful purchaser of the Assets a "good faith purchaser" under Section 363(m) of the Bankruptcy Code; and

e.   granting certain related relief as described herein and in the Sale Order.

In support of this Motion, the Trustee respectfully states as follows:

## BACKGROUND AND JURISDICTION

1.      On October 25, 2012 (the "Petition Date"), Debtor Submarina, Inc. ("Debtor" or "Submarina") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. [ECF No. 1].  No committee of unsecured creditors has been appointed.

2.      Submarina is a franchisor of submarine sandwich restaurants.

3.      Both before and after the Petition Date, Submarina has been embroiled in protracted disputes with franchisees.

4.      On January 17, 2017, the Court entered its *Memorandum Decision on Motion to Reconsider Order On Emergency Motion to Extend Time in Which to File an Amended Plan of Reorganization and Disclosure Statement* [ECF No. 578, the "Memorandum Decision"]. The Memorandum Decision, incorporated herein, set forth the history of this case, and ultimately appointed a Chapter 11 Trustee, finding:

> Continued operation of the business may be financially possible but only prolonged and continuous litigation is assured. At this juncture, appointment of a Chapter 11 trustee to independently examine the viability of the franchise operation, in lieu of immediately converting the proceedings to a Chapter 7 liquidation, offers the best hope of producing an objectively reasonable basis for reorganization. The court having considered the record and history in this matter concludes that such appointment is in the best interests of creditors, the bankruptcy estates, and all parties in interest, including the franchisees, within the meaning of Section 1104(a)(2).

*See* ECF No. 578 at 27:17-20.

5.     On February 8, 2017, W. Donald Gieseke was appointed, and remains, the duly acting Chapter 11 Trustee [ECF No. 592].

6.     Since appointment, the Trustee has (among other things) engaged in discussions with the Debtor's former management, franchisees of the Debtor, potential purchasers of the Debtor's assets, and other interested parties in the Bankruptcy Case.

7.     The Trustee has determined, in its business judgment, that a sale of substantially all of the Debtor's franchise related assets is the best avenue to maximize returns to creditors, limit the ongoing litigation between the Debtor and its franchisees and the related claims against the estate, and provides the greatest opportunity for the future success of the business and its franchisees.

8.     After appointment, the Trustee identified and contacted several potential purchasers and invited these parties to make a presentation to the Debtor's franchisees. These presentations took place between April 12, 2017 to April 18, 2017. At the close of presentations, the Trustee invited the franchisees to submit comments and invited the potential purchasers to make offers.

9.     On May 3, 2017, the Trustee received a proposal from Sinelli Concepts International, Inc. (or its assignee, the "Proposed Buyer") to purchase certain assets of the

Debtor.  The Trustee has continued to negotiate with the Proposed Buyer and this Motion, and the sale proposed herein, is a product of those negotiations.  The Trustee has also engaged in discussions with potential alternative purchasers and believes a sale of substantially all of the Debtor's franchise related assets may produce an active auction environment.

10.     The Trustee submits a prompt sale is important to preserve the value of the Debtor's operations as a going concern, safeguard the assignability of the Debtor's current franchise agreements (some of which expire soon), and ensure that existing franchisees have the support needed to continue viable operations at the franchisee level.  Given the prolonged dispute between Submarina and its franchisees and he Debtor's limited cashflow to continue operations for substantially longer, the Trustee is requesting this Motion be heard promptly and on shortened time if necessary.  The Trustee proposes the hearing on this matter be held on July 12, 2017 at 9:30 a.m., or as soon thereafter as reasonably practicable.

11.     This Court has jurisdiction of this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (K), (M), (N), and/or (O).

**The Proposed Sale**

12.     The Trustee proposes to sell the Assets free and clear of liens, claims and encumbrances and assume and assign certain executory contracts in connection with the Sale. The Trustee proposes an auction process to provide an opportunity for parties to bid on the Debtor's assets.  The proposed Bidding Procedures are designed to provide the Trustee with the flexibility necessary to allow the Trustee to maximize the value of the Debtor's assets.

**The Proposed Bidding Procedures**

13.     The Trustee is requesting that the Court follow certain bidding procedures for the sale of the Assets with a proposed final sale hearing date of July 12, 2017 at 9:30 a.m., or

as soon thereafter as reasonably practicable.  The following are the Trustee's proposed bidding procedures ("Bidding Procedures"):

14.     Participation Requirements. Unless otherwise ordered by the Court, to participate in the bidding process, each person or entity (each, an "Interested Party") will be required to deliver (unless previously delivered) the following materials to the Trustee or Trustee's counsel:   (a) an executed confidentiality agreement in a form agreeable to the Trustee, which will inure to the benefit of the Successful Bidder; (b) a statement and factual support demonstrating to the Trustee's satisfaction that the Interested Party has a bona fide interest in purchasing the Assets; (c) sufficient information, as determined by the Trustee, to allow the Trustee to determine that the Interested Party has the financial resources and authorizations to complete a purchase of the Assets, including financial disclosures acceptable to the Trustee in its business judgment and discretion; and (d) either a description of any proposed amendment or change to the Asset Purchase Agreement attached as Exhibit 1 or a marked redline version of the Asset Purchase Agreement (the "Marked Agreement") showing any proposed amendment or change.   A party that delivers the foregoing information to the Trustee is hereinafter referred to as a "Potential Bidder."

15.     Determination by the Trustee. The Trustee will determine whether any party is a Potential Bidder.  The Trustee is not required to provide information relating to the Debtor to any person who is not a Potential Bidder.

16.     Due Diligence.  The Trustee will coordinate all reasonable requests for additional information and due diligence materials from Potential Bidders.  In the event any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Trustee will be authorized to provide such materials to all Potential

Bidders. The Trustee is also authorized to provide a copy of any Marked Agreement to all Potential Bidders and will provide a copy of any Marked Agreement to the Proposed Buyer within 24 hours of receipt.

17. <u>Bid Deadline</u>. On or before seven (7) calendar days prior to the proposed Auction and Sale Hearing, i.e., July 5, 2017 (the "<u>Bid Deadline</u>"), a Potential Bidder that wishes to make a bid at the Auction is required to deliver written copies of its bid to the Trustee and the Trustee's counsel.

18. <u>Bid Requirements</u>. All bids must:

    a.  identify the legal name of the Potential Bidder (including any equity holders or other financial backers, if the Potential Bidder is an entity formed for the purpose of consummating the Sale);

    b.  provide that the Potential Bidder offers to purchase the Assets at the purchase price and upon the terms and conditions set forth in the form of Asset Purchase Agreement attached as <u>Exhibit 1</u>, or provide a redlined Marked Agreement showing any proposed amendment or change thereto;

    c.  state that all necessary filings under any regulatory or other laws will be made and paid for by the Potential Bidder;

    d.  be a formal, binding and unconditional agreement that is not subject to any due diligence and is irrevocable until the first Business Day following the closing of the Sale Transaction;

    e.  include a commitment to close the transactions contemplated by the bid no later than thirty (30) days after the Sale Hearing;

    f.  not entitle such Potential Bidder to a breakup fee, termination fee, expense

reimbursement or similar type of payment or reimbursement and that also includes a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to the Sale of Debtor's Assets;

g.  be accompanied by a good faith deposit in the amount of $25,000.00, refundable if the Potential Bidder is not the Successful Bidder at the Auction; and

h.  be received no later than the Bid Deadline.

19.  A Potential Bidder must accompany its bid with:

a.  satisfactory evidence of available cash, a commitment for financing (not subject to any conditions) or such other evidence of ability to consummate the Sale and provide adequate assurance of future performance of all obligations to be assumed in the Sale as the Trustee may reasonably request;

b.  a copy of a board resolution or similar authorization document demonstrating the Potential Bidder has the authority to make a binding and irrevocable bid on the terms proposed;

c.  a covenant to cooperate with the Trustee to provide relevant information regarding the Potential Bidder's operations reasonably required by the Trustee to assess the Potential Bidder's ability to perform;

d.  if the bid includes a Marked Agreement or a summary of any proposed amendment or change to the Asset Purchase Agreement, a signed statement that such bid is irrevocable through the closing of the Sale;

e.  any other documentation that is reasonably requested by the Trustee.

20.     The Trustee will, in its business judgment and discretion determine, whether a bid received from a Potential Bidder will be deemed a qualified bid ("Qualified Bid") and such party a qualified bidder ("Qualified Bidder").

21.     The Trustee may value a Qualified Bid based upon any and all factors that the Trustee deems pertinent, including, among others:

      a.   the purported amount of the Qualified Bid, including non-cash consideration, if any;

      b.   the value to be provided to the Trustee under the Qualified Bid, including the net economic effect upon the Debtor's estate if the bid were accepted;

      c.   contingencies with respect to the Sale Transaction and the ability to close the proposed Sale Transaction on a basis acceptable to the Trustee, and any incremental costs to the Trustee in closing delays;

      d.   the ability to obtain any regulatory or other approvals for the proposed transaction;

      e.   the ability to provide adequate assurance of future performance to the counterparties of any assumed executory contracts, including the ability to provide support to the Debtor's franchisees; and

      f.   any other factors the Trustee may deem relevant.

22.     Auction.  If at least one Qualified Bidder, in addition to the Proposed Buyer, makes a Qualified Bid by the Bid Deadline, the Trustee will ask the Court to proceed with the Auction at the Sale Hearing.  The Trustee submits that only (a) Qualified Bidders and (b) Potential Bidders who submitted a bid that satisfies the requirements of a Qualified Bid and are invited by the Trustee in its discretion to participate in the Auction, should be eligible to

participate in the Auction.  The Trustee may, in its discretion, withdraw some or all of the Assets from the Auction or sale at any time before entry of an order approving a Sale of the Assets.

23.     The Trustee proposes the Auction take place at the United States Bankruptcy Court, District of Nevada, Foley Federal Building, Courtroom 2, Third Floor, 300 Las Vegas Boulevard South, Las Vegas, Nevada, 89101, on July 12, 2017, at 9:30 a.m. (prevailing Pacific Standard Time), or at such other date and time as the Court may direct.

24.     Unless otherwise ordered by the Bankruptcy Court, only a Qualified Bidder or a Potential Bidder, will be eligible to participate at the Auction.

25.     At the Auction, participants will be permitted to increase their bids and improve their terms; provided that any such increased or improved bid or combination of bids must be a Qualified Bid (except that the Bid Deadline will not apply).  Bidding for the Assets will start at the $500,000 purchase price in the Stalking Horse Bid plus $25,000 (the "Minimum Overbid").

26.     The Trustee proposes that after the Minimum Overbid, bid increments for any additional bids start at a minimum of $10,000.

27.     Only bona fide secured creditors with an allowed secured claim against the Debtor's estate will be allowed to credit bid at the Auction.

28.     Return of Good Faith Deposit.  The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Trustee and while held in escrow will not become property of the Debtor's bankruptcy estate unless released from escrow pursuant to further order of the Bankruptcy Court.  The Trustee will retain the Good Faith Deposits of the Successful Bidder(s) until the closing of the Sale Transaction unless otherwise ordered by the

Bankruptcy Court.  The Good Faith Deposit of any party other than the Successful Bidder will be returned no later than the first Business Day following the closing of the Sale Transaction unless otherwise ordered by the Bankruptcy Court.  At the closing of the Sale Transaction contemplated herein, the Successful Bidder will be entitled to a credit for its Good Faith Deposit (not including interest accrued thereon).

29.    The Trustee believes that the proposed Bidding Procedures provide an appropriate framework for selling the Debtor's assets and will enable the Trustee to fully review, analyze and compare all bids received to determine which bid is in the best interest of the Debtor's estate. In order to incentivize the sale, the Trustee is seeking approval of a breakup fee or expense reimbursement to the Proposed Buyer not to exceed $15,000.

### Proposed Buyer and Bid Protections

30.    The proposed 'stalking horse' Asset Purchase Agreement is attached as **Exhibit 1**. The proposed buyer is Sinelli Concepts International, Inc., or its assignee (the "Proposed Buyer").  The Proposed Buyer is deemed to be a Qualified Bidder and the Proposed Buyer's bid is deemed a Qualified Bid.

31.    As set forth in the Asset Purchase Agreement, certain bid protections are afforded to the Proposed Buyer.   The bid protections set forth in the Asset Purchase Agreement are limited to a breakup fee or expense reimbursement for the Proposed Buyer's out of pocket expenses, capped at $15,000 (the "Expense Reimbursement").

32.    Approval of the modest Expense Reimbursement proposed is well grounded. Courts in this district generally defer to the business judgment of the trustee on such matters if the proposal is aimed at maximizing the value of the assets sold.  *See In re Village Hotel Investors, LLC,* Case No. 08-13043-LBR (Bankr. D. Nev. June 19, 2009) (breakup fee and

expense reimbursement, "fair and equitable, reflecting the exercise of [Trustee's] considered business judgment, and are reasonably required in order to maximize the value received for the sale of the Assets."); *see also In re Xyience Inc.*, Case No. 08-10474-MKN (Bankr. D. Nev. March 6, 2008) (breakup fee of $40,000 appropriate as exercise of debtor's business judgment).

33.    The Expense Reimbursement proposed to the Proposed Buyer relates to the post-petition Asset Purchase Agreement, and would be an administrative expense of Debtor's estate with priority over any and all administrative expenses specified in Sections 503(b) and 507(b) of the Bankruptcy Code.  *See* 11 U.S.C. § 503(b)(1)(A); *see also Microsoft Corp. v. DAK Industries, Inc. (In re DAK Industries, Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995).

34.    By participating in the due diligence process, conducting negotiations with the Trustee in good faith, and entering the proposed Asset Purchase Agreement, the Trustee submits that the Proposed Buyer has helped the Trustee establish baseline bid, including terms and a baseline price, that should serve as a guide for other potential bidders.  The Trustee believes such efforts will ultimately benefit the Debtor's estate and, as an exercise of business judgment, that the Proposed Buyer should be reimbursed (up to a maximum of $15,000) for its efforts in creating what is anticipated to be an active auction environment.

### Material Terms of the Proposed Asset Purchase Agreement

35.    Set forth below is a summary of the material terms of the Asset Purchase Agreement in accord with Local Rule 6004(5).  This description is intended as a summary of certain salient terms only, and is subject to (and qualified in its entirety by) the Asset Purchase Agreement, which should be reviewed independently and thoroughly.  Capitalized terms used in the subsections below have the meaning given them in the Asset Purchase Agreement.

a. **Purchase Price.**  Subject to the terms of the Asset Purchase Agreement, the Purchase Price to be paid for the Purchased Assets shall be $500,000.00.  No deposit has been required from the Proposed Purchaser.

b. **Assets to be Sold, including Avoidance Actions.**  The Purchased Assets in the Asset Purchase Agreement include, the Debtor's: (1) Intellectual Property (including Trademarks and Copyrights); (2) telephone numbers, URLs, Domain Names, social media accounts; (3) Trade Secrets; (4) all Franchise Agreements listed on Schedule 2.1(d) of the Asset Purchase Agreement (as may be modified by the Proposed Buyer prior to the Closing); (5) the Debtor's Accounts Receivable arising out of any Assumed Contract or Assumed Franchise Agreement, including those listed on Schedule 2.1(h) of the Asset Purchase agreement; (5) all goodwill and other intangible assets, including the goodwill associated with the Debtor's Intellectual Property; (6) all Documents related to the Purchased Assets; and (7) all Causes of Action, demands, and judgments listed on Schedule 2.1(h); all Causes of Action directly related to any pre-Closing breach of an Assumed Contract and/or Assumed Franchise Agreement; and all Avoidance Actions against a SUBMARINA Franchisee of an Assumed Franchise Agreement.

c. **Excluded Assets/Retention of Causes of Action and Avoidance Actions.**  The proposed Sale does not include, and specifically excludes, the following Excluded Assets:  (1) the Trustee's bank and other depository accounts and lockboxes; (2) all Contracts other than the Assumed Contracts; (3) all Avoidance Actions, except those listed on Schedule 2.1(h) of the Asset Purchase Agreement or otherwise included in Section 2.1(h) of the Asset Purchase Agreement, the Debtor or its estate may hold against any Person or Persons; (4) all Causes of Action, demands, and judgments, belonging to the Debtor against any Person or Persons, except listed on Schedule 2.1(h) or otherwise included in Section 2.1(h) of the Asset Purchase Agreement; (5) the Miscellaneous Accounts Receivable; (6) all Documents relating primarily to an Excluded Asset or an Excluded Liability; and (7) all other assets not specially sold under the Asset Purchase Agreement.

d. **Assumption and Assignment of Certain Contracts and Franchise Agreements.**  Schedule 2.1(d) of the Asset Purchase Agreement includes a list of the executory contracts and leases, including the franchise agreements, that are proposed to be assumed and assigned to the Purchaser as part of the proposed sale.  Within five (5) business days of the filing of this Sale Motion, the Seller will prepare and file with the Bankruptcy Court an Assumed Contract List and Cure Schedule identifying the each proposed Assumed Contract and Assumed Franchise Agreement and the estimated and proposed Cure Amounts for each.  The Assumed Contract List and Cure Notice will be served on each counterparty to the proposed Assumed Contracts and Assumed Franchise Agreements reflected therein.  Any counterparty to a Contract or Franchise Agreement included on the Assumed Contract List shall have until two (2) days

prior to the Sale Hearing to file with the Bankruptcy Court and serve on the Purchaser and Seller an objection to the proposed Cure Amount listed on the Cure Schedule and to the adequate assurance of future performance by Purchaser.  All Contracts and Franchise Agreements to which Debtor is a party, or by which the Debtor or any of its assets or properties are bound, that are not listed on the Assumed Contract List are deemed to be "Excluded Contracts" under the Asset Purchase Agreement.   The Purchaser is obligated to pay all Cure Amounts related to any Assumed Contract or Assumed Franchise Agreement (including, for avoidance of doubt, amounts in excess of the estimated amounts on the Cure Schedule). At any time prior to the Closing Date, Purchaser may remove contracts from the Assumed Contract List by sending written notification to the Seller and within twenty-four hours of receipt of the notice, the Seller shall file such notice with the Bankruptcy Court and serve it on the non-debtor counterparties.  Purchaser shall assume all obligations regarding the demonstration of adequate assurance of future performance required with respect to the Assumed Contracts under Section 365 of the Bankruptcy Code.

e.  **Closing.**   Subject to the specific terms of the Asset Purchase Agreement, the Closing of the purchase and sale of the Purchased Assets is anticipated to take place as promptly as practicable, and at no time later than 30 calendar days following the Sale Order becoming a Final Order.

f.  **Representations and Warranties of Seller.**  Subject to the specific terms of the Asset Purchase Agreement, the Seller is making the following Representations and Warranties:  (1) that, subject to Bankruptcy Court approval and entry of a final Sale Order, the Seller has the full power to execute the Asset Purchase Agreement and its related documents; (2) that, on the Closing Date, the Seller will transfer title of the Purchaser to the Purchased Assets free and clear of all Encumbrances; and (3) that, other than the foregoing, the representations and warranties provided by the Seller are limited, that the sale is made without recourse, and the Purchased Assets are being sold "As Is" and "With All Faults."

g.  **Representations and Warranties of Purchaser.**   Subject to the specific terms of the Asset Purchase Agreement, the Purchaser is making the following Representations and Warranties: (1) the Purchaser has the full power to execute the Asset Purchase Agreement and its related documents; (2) that execution of the Asset Purchase Agreement will not: (a) result in the breach or default under the Purchaser's organizational documents or violate any Order or Legal Requirement affecting the Purchaser; (b) require additional approval other than filings with the Bankruptcy Court; (3) that there is no pending or anticipated litigation between any Person or Governmental Authority against or relating to the Purchaser or its assets which, if adversely determined, would reasonably be expected to have a material adverse effect on the Purchaser's performance obligations in the Asset Purchase Agreement; (4) that the Purchaser has not

paid, or agreed to pay, any fee or commission to any broker, finder or intermediary related to the Asset Purchase Agreement; (5) that, at the Closing Date, the Purchaser will have all funds necessary to close the transaction, including payment of the Purchase Price; and (6) that the Purchaser does not hold, directly or indirectly, any beneficial ownership interest in the Debtor, its Affiliates, or its securities.

h.   **Conditions to Closing (both parties).**  The obligation of both Purchaser and Seller to close is contingent on the Bankruptcy Court's entry of a Sale Order and that the Sale Order shall have become a Final Order, except that the Purchaser may waive this condition in its sole and absolute discretion without notice or consent to any parties in interest in the Bankruptcy Case or the need for further approval of the Bankruptcy Court.  The sale is contingent on the Sale Order: (a) authorizing the sale of the Purchased Assets free and clear of all liens, claims, and encumbrances (except any liabilities assumed by Purchaser); (b) authorizing assumption of all Assumed Contracts, including the Assumed Franchise Agreements; (c) determining that the Purchaser is a good faith buyer under Section 363(m) of the Bankruptcy Code; (d) determining that the offer made by Purchaser is the highest or best offer for the Assets; and (e) authorizing the Seller to execute any documents or perform any tasks to effectuate and consummate the sale.

i.   **Conditions to Seller's Obligation to Close.** The obligation of the Seller to close the sale transaction is further contingent on the following: (a) that the representations and warranties of the Purchaser are true and correct in all material respects as of the Closing Date; (b) that the Purchaser has complied with all obligations of the Purchaser prior to the Closing; and (c) payment of the Purchase Price.

j.   **Conditions to Purchaser's Obligation to Close.** The obligation of the Purchaser to close is further contingent on the following:  (a) that the representations and warranties of the Seller are true and correct in all material respects as of the Closing Date; (b) that the Seller has complied with all obligations of the Seller prior to the Closing; and (c) delivery by the Seller of executed copies of the Bill of Sale, Assignment and Assumption of Franchise Agreements, Assignment of Trademarks, and each other Ancillary Document to which Seller is a party.

k.   **Breakup Fee:**  Subject to approval of the Bankruptcy Court, Purchaser shall be entitled to a termination or breakup fee equal to the lesser of (i) Purchaser's expenses incurred in connection with the Asset Purchase agreement and sale of Debtor's assets, and (ii) $15,000.

l.   **Termination Rights.**  The Asset Purchase Agreement may be terminated in the following circumstances: (i) by mutual consent of the Seller and Purchaser; (ii) automatically if a Governmental Authority enters a final and non-appealable

order restraining, enjoining or prohibiting the transfer of the Purchased Assets; (iii) automatically if the Bankruptcy Court approves an Alternative Transaction; (iv) by either the Purchaser or the Seller if the Sale Order is appealed prior to the Closing; (v) by the Purchaser if the Seller fails to cure a material breach within ten (10) calendar days of receipt of notice of breach; (vi) by the Purchaser if the Bankruptcy Court has not entered the Sale Order by July 31, 2017; (vii) by the Purchaser if Purchaser removes any Franchise Agreement from the Assumed Contract List on account of an inability to resolve a franchisee's claim or objection pursuant Section 2.5 of the Asset Purchase Agreement, and if such removal materially affects the value or integrity of the franchise system as a whole. For avoidance of doubt, removal of any Franchise Agreement with a remaining term of more than 6 months will be considered "material" for purposes of this provision; (viii) by the Seller if the Purchaser fails to cure a material breach within ten (10) calendar days of receipt of notice of breach; (ix) by the Seller if the conditions precedent to Closing set forth in Section 8.2 of the Asset Purchase Agreement have been not been satisfied or waived; and (x) by the Seller if the Purchaser breaches its obligations to consummate the sale by the Closing.

## The Proposed Purchaser is a Good Faith Purchaser under 11 U.S.C. § 363(m)

36.    A good faith finding under 11 U.S.C. § 363(m) is appropriate. A "good faith purchaser" is one who buys in "good faith" and "for value." *T.C. Investors v. Joseph (In re M Capital Corp.)*, 290 B.R. 743, 746-47 (9th Cir. BAP 2003). "Typically, lack of good faith is shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id*. at 746 (internal quotation and citation omitted). Here, to the best of the Trustee's knowledge, the Proposed Buyer is not an insider or otherwise personally connected with the Debtor, and the proposed sale represents an arms-length transaction between the parties resulting from an earnest sale process, made without fraud, or collusion, and no attempt has been made by either party to take any unfair advantage of the other.

## Proposed Notice of the Sale Hearing

37.    Local Rule 9014(a)(1) states that, "[a]ll motions which are required to be set for hearing, whether by statute, rule, or court order, shall be sset so that at least twenty-eight (28)

days' notice of the hearing of the motion is given." Under Local Rule 9014(a)(2), "[a] party may request a hearing on less than twenty-eight (28) days' notice in accord with LR 9006."

38.    The proposed timing of the Sale is expedited under Local Rule 9014(a)(1)-(2), however, the applicable Bankruptcy Rules support the proposed timeframe within which the Trustee seeks approval of the Sale.

39.    Bankruptcy Rule 6004 provides that "[n]otice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k), and, if applicable, in accordance with §363(b)(2) of the Bankruptcy Code. *See* Fed. R. Civ. P. 6004(a). Subsections (a)(2), (c)(1), (i), and (k) of Rule 2002, read together, require the movant to give all creditors and certain other parties "at least 21 days' notice by mail" of the sale of and the time and place of the auction. Under Fed. R. Bank. P. 2002(c), this notice must include the date, time, and place of the Auction and Sale Hearing, and the deadline for filing any objections to the relief requested in this Motion.

40.    Substantially contemporaneously with filing of this Motion, the Trustee will file and serve the proposed Auction and Sale Hearing Notice by first-class mail, postage prepaid upon the following parties: (a) the office of the United States Trustee for the District of Nevada (the "U.S. Trustee"); (b) the Trustee's master service list maintained in these administratively consolidated cases, which includes all known creditors; (c) all known counterparties to the Debtor's executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale; (d) applicable taxing authorities, including the Internal Revenue Service; (e) all parties known to the Trustee who have expressed an interest to the Debtor's Assets; and (f) all parties requesting notice in the above captioned

administratively consolidated chapter 11 cases.  In addition, the Trustee will serve a reduced

size copy of this Motion (double sided, four pages per side) on the forgoing persons and the

Auction and Sale Hearing Notice will indicate that full-size copies of this Motion and any

future sale documents, if applicable, can be obtained from the Trustee or the Trustee's counsel.

41.   The proposed Auction and Sale Hearing Notice served pursuant to the above

paragraph will specifically note that the date and time of the Sale Hearing and any objection

deadlines have not yet been approved by the Bankruptcy Court and thus are subject to change.

Further, the proposed Auction and Sale Hearing Notice states that if the Court schedules the

Sale Hearing for any date and time other than July 12, 2017 at 9:30 a.m. (Pacific Time), or sets

any objection deadline contrary to what is stated above, parties receiving the Notice will be

served an additional Notice providing the date(s) and time(s) as set by the Court.

42.   The proposed Auction and Sale Hearing Notice includes, among other things, the

proposed date, time and place of the Auction and the Sale Hearing and the deadline for filing

any objections to the Sale proposed herein, and, will otherwise comply with Fed. R. Bank. P.

2002(c).

43.   The Trustee proposes that, in accord with Bankruptcy Rule 6004(b), the deadline

for objecting to approval of the proposed Sale and relief sought herein be Wednesday, July 5,

2017.

44.   The Trustee submits that the methods of notice described above constitute

adequate notice of the proposed Sale of the Assets.

### Proposed Assumption and Assignment Procedures

45.   The Trustee may also assume and assign certain executory contracts as part of the

Sale, including any franchise related agreements to which the Debtor is a counterparty (the

"Assumed Contracts and Assumed Franchise Agreements").  The Assumed Contracts and

Assumed Franchise Agreements are listed on Schedule 2.1(d) of the Asset Purchase

Agreement, which may be amended by the Purchaser at any time before the closing of the

sale.

46.    No later than five (5) business days after the filing of this Motion, the Trustee will

file and notice a schedule of the Assumed Contracts and Assumed Franchise Agreements

(collectively the "Assumed and Assigned Agreements") and related cure obligations ("Cure

Schedule") for all executory contracts and leases set forth on Schedule 2.1(d) of the Asset

Purchase Agreement (the "Assumption and Assignment Notice").  The Assumption and

Assignment Notice and included Cure Schedule will include a description of each Assumed

Contract and Assumed Franchise Agreement potentially to be assumed and assigned to a

potential buyer and the amount, if any, the Trustee believes is necessary to cure such

agreements under Section 365 of the Bankruptcy Code (the "Cure Costs").  A copy of the

Assumption and Assignment Notice, together with the Cure Schedule, will be served on each

of the non-debtor counterparties listed therein by first class mail on the date that the

Assumption and Assignment Notice is filed with the Court.

47.    The Trustee proposes that any objections ("Assumption/Cure Objection") to the

Proposed Buyer's assumption and assignment of the Assumed Contracts and Assigned

Franchise Agreements, and/or the Cure Costs set forth on the Cure Schedule, must be in

writing and filed with the Court on or before Monday, July 10, 2017, and (if not electronically

filed) also be served so as to be received no later than July 10, 2017 by: (a) the Trustee, W.

Donald Gieseke, Chapter 11 Bankruptcy Trustee for the estate of Submarina, Inc., 18124

Wedge Pkwy., Suite 518, Reno, NV 89511; and (b) Trustee's counsel, L. Edward Humphrey,

Esq., Humphrey Law PLLC, 201 West Liberty St., Suite 204, Reno, Nevada, 89501.

48.    If no objections are received, then the Cure Costs set forth in the Assumption and Assignment Notice will be binding upon the nondebtor parties to the Assumed and Assigned Agreements for all purposes and will constitute a final determination of the total Cure Costs required to be paid by the Trustee in connection with the assumption and assignment of the Assumed and Assigned Agreements.  In addition, all counterparties to the Assumed and Assigned Agreements will: (a) be forever barred from asserting any additional cure or other amounts with respect to the Assumed and Assigned Agreements, and the Trustee and the successful purchaser will be entitled to rely solely upon the Cure Costs set forth in the Assumption and Assignment Notice; and (b) be forever barred and estopped from asserting or claiming against the Debtor or the successful bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed and Assigned Agreements or that there is any objection or defense to the assumption and assignment of such Assumed and Assigned Agreements.  Under the Asset Purchase Agreement with the Proposed Buyer, the Proposed Buyer has retained the right to remove contracts from the list of Assumed and Assigned Agreements until the closing of the sale.

49.    A nondebtor counterparty to an Assumed and Assigned Agreement shall have until two (2) days prior to the Sale Hearing to timely file and serve an objection asserting a cure amount higher than the proposed Cure Costs (the "Disputed Cure Amount").  To the extent the parties are unable to consensually resolve the dispute before the Auction and Sale Hearing, the amount to be paid under section 365 of the Bankruptcy Code with respect to such Disputed Cure Amount shall be determined at the Auction and Sale Hearing or at such other date and time as may be fixed by the Court.  All other objections to the proposed assumption

and assignment of an Assumed and Assigned Agreement will be heard at the Auction and Sale Hearing.  In this, the Trustee proposes that the deadline for objecting to the assignment of the Assumed and Assigned Agreements to any Potential Bidder (other than the Proposed Buyer) on the basis of adequate assurance of future performance will be during the Auction and Sale Hearing.

50.    The Trustee requests that any party that does not timely object to the transactions proposed herein be deemed to consent to the treatment of its executory contract and/or unexpired lease under Section 365 of the Bankruptcy Code.  *See Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); *Pelican Homestead v. Wooten (In re Gabeel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).  Moreover, the Trustee requests that any such party be deemed to consent to the assumption and assignment of its executory contract and/or unexpired lease notwithstanding any anti-alienation provision or other restriction on assignment.  *See* 11 U.S.C. §§ 365(c)(1)(B), (e)(2)(A)(ii), and (f).

**INFORMATION REQUIRED BY LOCAL RULE 6004**

51.    The following information is provided in compliance with Local Rule 6004:

a)  A copy of the proposed Asset Purchase Agreement is attached as Exhibit 1.

b)  A list of all claimants with a potential interest in the Purchased Assets is set forth in Paragraph 58 below.

c)  A copy of the proposed form of Sale Order is attached as Exhibit 4.

d)  At this time, there has been no request has been made for the appointment of a consumer privacy ombudsman.  If such becomes necessary, the Trustee will supplement this Motion accordingly.

e) Material terms of the Asset Purchas Agreement are set forth above in Paragraph 35 above.

f) In further compliance with Local Rule 6004, and Local Rule 6004(6) in particular, the Trustee states:

    a. Based on the Trustee's information and belief, the Sale is not to an insider.

    b. Based on the Trustee's information and belief, the Proposed Purchaser has not entered into any agreements with the Debtor's key management or key employees regarding compensation or future employment.

    c. The proposed Asset Purchase Agreement does not include an express release of any claims belonging to, or against, the estate.  However, the proposed procedure for assumption and assignment of executory contacts is aimed at limiting future litigation involving the Debtor, its franchisees, and any successful purchaser.

    d. An auction is contemplated.

    e. Unless waived, the deadline to close the proposed sale is 30 days after the Sale Order becoming a Final Order.  The closing is anticipated to be no later than August 31, 2017.

    f. The Proposed Purchaser has not been required to make a good faith deposit.  However, any proposed overbidders at the auction are required to make a $25,000 refundable deposit.

    g. No interim agreements with the Proposed Purchaser, related to management or otherwise, have been made.

    h. The Trustee does not propose to release any sale proceeds on or after the closing, or make any definitive allocation of sale proceeds, except as may be necessary to satisfy any liens and encumbrances required to be paid under Section 363(f) of the Bankruptcy Code.

    i. The sale proposed herein is not made in conjunction with a plan of reorganization confirmed under Section 1129 of the Bankruptcy Code and Trustee does not currently seek to have the sale declared exempt from taxes under 11 U.S.C. § 1146(a).

    j. The Trustee will retain adequate access to the Debtor's books and records pursuant to the Asset Purchase Agreement.

k.  Under Section 2.2(c) of the Asset Purchase Agreement, the Trustee is retaining all Avoidance Actions under Chapter 5 of the Bankruptcy Code, except those listed on Schedule 2.1(h) or are otherwise included in Section 2.1(h) of the Asset Purchase Agreement as a Purchased Asset.  In short, the Seller retains all Avoidance Actions except those against any SUBMARINA Franchisee of an Assumed Franchise Agreement.

l.  With respect to successor liability claims, Section 7.4 of the Asset Purchase Agreement provides that the transfer of Purchased Assets shall be free and clear of all liens, claims and encumbrances of third parties pursuant to Section 363(f) of the Bankruptcy Code and "that the Purchaser shall not be liable in any way (as successor entity or otherwise) for any Claims that any of the foregoing or any other third party may have against the Seller except as expressly provided herein."

m.  The sale does not propose to sell any property subject to a possessory leasehold interest.

n.  The proposed Bidding Procedures contemplate the allowance of credit bidding of allowed secured claims only.  As of this filing, the Trustee submits any secured claims scheduled or filed in this case have either been paid in full or are disputed.

o.  This Motion requests relief from the 14 day stays imposed by Fed. R. Bank. P. 6004(h) and 6006(d).

## **Approval of the Sale Is Appropriate Under 11 U.S.C. § 363(b)**

52.    Under Section 363(b) of the Bankruptcy Code, the Trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate."  *See* 11 U.S.C. § 363(b).  This provision generally allows for the sale of the property of the estate outside the ordinary course of business, subject to court approval, where the proposed sale is a sound exercise of business judgment and when the sale is proposed in good faith and for fair value. *See In re Air Beds, Inc.*, 92 B.R. 419 (9th Cir. BAP 1998).

53.    When a trustee demonstrates a valid business justification for a decision, a presumption arises that the decision was made, "on an informed basis, in good faith and in the

23

honest belief that the action taken was in the best interests of the company." *See Official*

*Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147

B.R. 650, 656 (S.D.N.Y. 1990) (finding the business judgment rule has "vitality by analogy"

in a chapter 11 proceeding) (citations omitted).

54.    The Trustee, in its business judgment, believes that the terms of the Asset

Purchase Agreement propose a fair and reasonable offer for the Estate to preserve the value of

the Assets under the circumstances.  The Proposed Buyer's offer is at arms' length and the

Proposed Buyer will take the Assets on an "as-is" basis, without any contingencies or

representation of condition.

55.    In addition, the Trustee has proposed the Sale in good faith and is providing direct

notice of the sale to all known creditors of the Debtor's estate and known counterparties to the

Debtor's executory contracts.  Finally, because the Sale is subject to the proposed Bidding

Procedures and the Auction, the price ultimately received should be deemed fair and

reasonable.

**Approval of the Sale Free and Clear of Liens, Claims and Encumbrances**

56.    The Trustee requests approval to sell the Assets free and clear of any and all liens,

claims, interests and encumbrances under Section 363(f) of the Bankruptcy Code. Pursuant to

section 363(f), estate property can be sold "free and clear of any interest in such property of an

entity other than the estate" if any one of the following conditions is satisfied:

a.    applicable nonbankruptcy law permits sale of such property free    and clear of

such interest;

b.    such entity consents;

c.  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d.  such interest is in bona fide dispute; or

e.  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)-(5).

57.     Section 363(f)(4) of the Bankruptcy Code authorizes the Trustee to sell property "free and clear of any interest in such property" if "such interest is in bona fide dispute."  See 11 U.S.C. § 363(f)(4).  A 'bona fide dispute' exists if the interest's validity is subject to an objective factual or legal dispute.  *See, e.g., Union Planters Bank, N.A. v. Burns (In re Gaylord Grain L.L.C.)*, 306 B.R. 624, 627-28 (8th Cir. BAP 2004) (citations omitted).  "[A] court need not determine the probable outcome of the dispute, but merely whether one exists."  *Id*. at 627.

58.     Debtor's Amended Schedule D, filed December 12, 2012 at ECF No. 26, lists the following Secured Claims, which relate to the below corresponding proofs of claim filed against Debtor's estate ("POC"):

a.  Great America Leasing, is listed on Debtor's Amended Schedule D as having a secured claim in an unknown amount related to a lease of computers/server. The Trustee is informed and believes the Debtor returned the collateral to Great American Leasing.  Thus, any related secured claim of Great America Leasing related to this item has either been satisfied, or is disputed.

b.  Great America Leasing, with a secured claim of $6,512.81 related to a lease of a phone system.

    i.  Great America Leasing Corporation filed POC 1-1 on November 13, 2012 in the secured amount of $2,788.09. The Trustee is informed and believes the Debtor returned the corresponding collateral to Great American Leasing.  Great American Leasing withdrew POC 1-1 on or about April 18, 2016.  *See* ECF No. 436.  Thus, any related secured claim of Great America Leasing related to this item has either been satisfied, or is disputed.

c.  Subbros, Inc., a scheduled secured claim of $250,614.74 related to "area developer rights purchased from Subbros."

    i.  SD Subbros, Inc. ("SD Subbros") filed POC 6-1 on February 27, 2013, asserting a secured claim in the amount of $250,614.74.  The Trustee is informed and that the Debtor paid SD Subbros $299,514.88 post-petition (either through cash payments or setoffs).  *See* ECF Nos. 233, 235, 466.  The Trustee further notes that it does not appear that the underlying obligation forming the basis of this claim is is secured by a UCC-1 financing statement and the basis of the claimed security interest remains unclear to the Trustee.  Thus, any asserted secured claim(s) of Subbros, Inc. and/or SD Subbros is either paid, or is disputed.

d.  On March 4, 2013, Marie Zeller filed POC 19-1 (the "Zeller POC"), asserting a secured claim in the amount of $431,151.67, for a "judgment based on money lent and unpaid wages."   While the Zeller POC attaches an Amended Judgment dated July 10, 2012, in the amount of $413,456.55, it does not appear this judgment was ever recorded or properly perfected.  Thus, it appears any

claim related to the Zeller POC appears to be an unsecured claim. The secured status of the Zeller POC is disputed.

59.     The Trustee submits that the Sale of the proposed Assets free and clear of liens, claims and encumbrances meets the requirements of section 363(f) of the Bankruptcy Code. The Trustee also believes that the service of the Auction and Sale Hearing Notice in accordance with the terms set forth in this Motion will afford creditors sufficient notice of the proposed Sale and provides additional justification for approval of the sale free and clear of all liens, claims and encumbrances.

## Approval of the Assumption and Assignment of Executory Contracts and Unexpired Leases

60.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection. *See, e.g., In re Pomona Valley Med. Grp. Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003); *see also In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (finding that assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court").

61.     Under Section 365(b)(1) of the Bankruptcy Code, if there has been a default in an executory contract, the Trustee "compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract, for any actual pecuniary loss to such party resulting from such default" and "provides adequate assurance of future performance under such contract or lease." 11 U.S.C. § 365(b)(1).

62.     Under section 365(f) of the Bankruptcy Code, a debtor, after assuming a contract, may assign its rights under the contract to a third party. 11 U.S.C. § 365(f).  Further, Section 363(k) of the Bankruptcy Code states that a debtor's assignment of a contract or lease "relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment."  11 U.S.C. § 363(k).  Accordingly, following assumption and assignment of the Assumed Contracts and Assumed Franchise Agreements defined in the Asset Purchase Agreement to the successful purchaser, the Debtor, its estate, and the Trustee will be relieved of any and all liability related to such contracts and leases.  This supports the Trustee's valid exercise of business judgment.

63.     As set forth above, the Trustee has proposed notice procedures, in the form of the Assumption and Assignment Procedures.  The Assumption and Assignment Notice makes clear to all counterparties exactly how each Assumed and Assigned Agreement will be cured. These procedures provide all counterparties to Assumed and Assigned Agreements adequate time and opportunity to object to both the proposed assumption and assignment of the executory contract or lease to the Proposed Purchaser or Successful Bidder, as well as the proposed Cure Costs.  The Proposed Purchaser or Successful Bidder shall be obligated to pay or cause to be paid any and all cure amounts with respect to the Assumed and Assigned Agreements.  In the event of a dispute as to any Cure Cost, the Successful Bidder shall only be obligated to pay the cure amount finally determined following resolution of the dispute.

64.     The assumption and assignment of certain executory contracts and unexpired leases, particularly the Debtor's franchise agreements, is an important component of the sale of the Assets. It is thus an appropriate exercise of business judgment for the Trustee to agree to assume and assign the Assumed and Assigned Agreements. Additionally, the Trustee submits

that the notice provisions and objection deadline for counterparties to raise objections to the assumption and assignment of contracts and leases, as proposed in this Motion, are adequate to protect the rights of counterparties to the Debtor's executory contracts. Further, if necessary, a proposed purchaser can demonstrate adequate assurance of future performance at the Sale Hearing.

### Relief Under Bankruptcy Rule 6004(h) and 6006(d) is Appropriate.

65.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless that court orders otherwise."  Bankruptcy Rule 6006(d) similarly provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 363(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  The Trustee requests that any order authorizing the transactions proposed herein be effective immediately by waiving the 14-day stay of Bankruptcy Rules 6004(h) and 6006(d).

66.    The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  See Advisory Committee Notes to Bankruptcy Rules 6004(h) and 6006(d).  Although the Bankruptcy Rules and Advisory Committee Notes are silent as to when a could should "order otherwise" and eliminate or reduce the 14-day stay, Collier suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately, "where there has been no objection to the procedure."  See 10 Collier on Bankruptcy, § 6004.10 (15th Ed. Rev.).  Collier further suggests that if an objection is overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a

stay pending appeal, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party.

67.    The Trustee respectfully requests that, upon entry of the Sale Order, the Court waive the 14 day stay requirements of Bankruptcy Rules 6004(h) and 6006(d). The waiver of the 14 day stay imposed by these rules will allow any Sale to close as soon as possible and prevent further delay in the administration of these cases.

## **Consent to Jurisdiction**

68.    Pursuant to Local Rule 7008 the Trustee consents to the entry of a final judgment or order with respect to this Motion if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## **No Prior Request**

69.    No prior request for the relief sought herein has been made to this Court or any other Court.

WHEREFORE, the Trustee respectfully requests that the Court (i) approve the Bidding Procedures, (ii) enter the Sale Order, in a form attached hereto as Exhibit 4, or such other order approving a sale to such other party that is the successful bidder at the Auction and (iii) grant such other and further relief that may be appropriate under the circumstances.

DATED:  June 17, 2017.

Respectfully submitted,

**HUMPHREY LAW PLLC**

By: /s/ L. Edward Humphrey, Esq.
L. Edward Humphrey, Esq.
*Attorney for Chapter 11 Trustee*